**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 19, 2019**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.S.-1, C.S., D.S., and J.S.-2**

**No. 18-0974** (Kanawha County 2017-JA-417, 2017-JA-418, 2017-JA-419, and 2017-JA-420)


# MEMORANDUM DECISION


Petitioner Father J.S.-3, by counsel Raymond Keener, III, appeals the Circuit Court of Kanawha County's October 3, 2018, order terminating his parental rights to J.S.-1, C.S., D.S., and J.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer N. Taylor, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, the DHHR filed a petition alleging that petitioner permitted the children's grandfather, a convicted sex offender, to have unsupervised contact with his minor children. The DHHR alleged that one of petitioner's children, J.S.-2, reported that the grandfather took her into the woods, bound her hands together, and made her sit on his lap. At the preliminary hearing that same month, the DHHR confirmed that the grandfather was convicted of incest and a registered sex offender.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two children and petitioner share the same initials, we refer to them as J.S.-1, J.S.-2, and J.S.-3, respectively, throughout this memorandum decision.

Further, the DHHR presented evidence that petitioner permitted the grandfather to have unsupervised contact with the children. The circuit court found probable cause that the children were in imminent danger and ratified their removal from the home. Petitioner moved for a pre-adjudicatory improvement period, but he testified regarding his conflicting thoughts about the crime of incest, opining that one cannot have incest with a willing partner. Petitioner acknowledged that he stated if the grandfather engaged in an incestuous relationship with one of petitioner's daughters that he would kill both the child and the grandfather. Based on this evidence, the circuit court denied petitioner's motion for a preadjudicatory improvement period and found that petitioner did not fully appreciate the harm in which he placed his children.

In November of 2017, the circuit court held an adjudicatory hearing and granted the DHHR's motion to incorporate testimony from the preliminary hearing. In addition, the DHHR presented testimony of a DHHR worker who spoke with two of the children who confirmed that J.S.-2 was in the woods with her grandfather, "who bound her wrists and made her sit on his lap while they were on the porch." The children advised that they observed bruising on J.S.-2's wrists. Further, the DHHR worker testified that petitioner admitted the grandfather lived in a van on their property, although petitioner denied this fact. Petitioner testified and acknowledged that there was a risk in exposing his children to their grandfather, but when asked why he allowed the contact to continue, he answered "I don't know." The DHHR called petitioner's parenting educator as a rebuttal witness who testified that petitioner was disruptive, argumentative, and did not meaningfully participate in classes. Ultimately, the circuit court found clear and convincing evidence that the children were abused and neglected and that petitioner was an abusing parent. However, the circuit court deferred ruling on petitioner's motion for a post-adjudicatory improvement period and ordered petitioner to continue participating in drug screens, parenting classes, supervised visitations, and other services provided by the DHHR.

The circuit court conducted a dispositional hearing in January of 2018 and granted petitioner a ninety-day post-dispositional improvement period. In April of 2018, the circuit court held a review hearing and heard evidence that petitioner was not complying with services. According to the providers, petitioner was often argumentative and uncooperative. Petitioner's psychological evaluation recommended eleven behavioral modifications, but petitioner had only implemented one. However, in June of 2018, the circuit court found that petitioner "recently demonstrated an understanding and willingness to comply with the requirements of the improvement period" and granted petitioner an additional ninety-day improvement period.

In September of 2018, the circuit court held the final dispositional hearing and petitioner moved to relinquish his parental rights to the children. According to petitioner, he did not understand or agree with the allegations set forth in the petition, but wanted to relinquish his rights because he was being "blackballed" by the DHHR. The circuit court refused to accept petitioner's relinquishment and proceeded to hear evidence on the DHHR's motion to terminate his parental rights. The DHHR presented testimony that petitioner failed to cooperate with DHHR workers and therapists and that the only services he did comply with was drug screening. The testifying DHHR worker opined that if the children were returned to petitioner's custody, he would continue to allow the grandfather to have contact with the children. According to the DHHR, petitioner did not recognize the danger of allowing the grandfather to have contact with

the children and blamed the grandfather's past criminal behavior on his sister, the victim of the grandfather's crimes. Petitioner did not testify.

Ultimately, the circuit court found that the DHHR presented credible evidence that petitioner "had not complied with the terms of the improvement period, had not benefited from the few services that he did obtain, and continued to be confrontational, uncooperative and unwilling to acknowledge or recognize the issues that resulted in the filing of the [p]etition." Additionally, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because petitioner demonstrated an inadequate capacity to solve the problems on his own or with help. The circuit court also found that petitioner was a hazard to his children in light of his failure to recognize the danger in permitting the grandfather to be around the children. Accordingly, the circuit court terminated petitioner's parental rights by its October 3, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights and asserts that he significantly overcame the issues that led to the filing of the petition. In support, petitioner claims that the family no longer lives near the grandfather and that he "was taking all reasonable measures to keep [the grandfather] from having contact with his children." However, we note that petitioner does not cite to the record to support his assertion that he took

---

[2]The mother completed an improvement period, and the petition against her was dismissed. However, according to the parties, the DHHR filed a new petition against the mother and the children were removed from her care. The children are currently in foster care with a permanency plan of reunification with their mother and a concurrent permanency plan of adoption.

any steps to limit the grandfather's contact with the children. Rather, the circuit court found that petitioner failed to acknowledge the potential danger of allowing the grandfather to have contact with the children. Accordingly, we find no merit in petitioner's argument.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." The circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because petitioner did not cooperate with services and did not benefit from the few services that he participated in. Petitioner does not challenge these findings on appeal. Instead, petitioner argues that he complied with drug screening, while wholly ignoring the fact that he never acknowledged the danger he placed the children in by leaving them with the grandfather. In short, petitioner's compliance with drug screening alone is insufficient to warrant relief.

This Court has previously recognized that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Despite multiple opportunities provided by the circuit court, petitioner failed to demonstrate an understanding of his dangerous conduct, even going so far as to blame the grandfather's past criminal behavior on the victim of his crimes. Further, petitioner's inability to recognize this danger made it likely that the children would later be re-exposed to the grandfather and, therefore, exposed to further threat. Accordingly, the circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the welfare of the children.

Petitioner also argues that the circuit court should have recognized his parental improvements and imposed a less-restrictive dispositional alternative instead of terminating his parental rights. Petitioner acknowledges that this Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Again, we note that petitioner provides no citation to evidence of his "parental improvements." Based upon our review of the record, petitioner did not participate in services to improve his parenting. The record is rife with references that petitioner was argumentative with providers, which caused one provider to state that he was the most difficult client to date, and did not benefit from services. Further, petitioner references the mother's successful completion of an improvement period as an opportunity to provide him additional time to improve. However, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the [children] and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). The circuit court's findings support termination of petitioner's parental rights because there was no likelihood that he would improve. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Further, because the parties indicate that a new proceeding has been instituted against the mother, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Lastly, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the

child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 3, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison